Case number 21-1159, State of Arizona et al. Petitioners v. Environmental Protection Agency Michael S. Regan, Administrator. Mr. Ensign for the Petitioners, Ms. Chen for the Respondents. Good morning. Is it Ensign? It is, Your Honor. Welcome. Please proceed. The Bay of Pleasant Court, Drew Ensign, Arizona Deputy Solicitor General for the Petitioner State. I'd like to reserve about four minutes for rebuttal. The delay in rule here is unlawful for three reasons. First, the delay rule's entire purpose is to reconsider the prior rule. For reconsideration, this Court has been perfectly clear that the mere fact of reconsideration is not a valid basis. Before you get too deep into the merits, can we talk about standing? Absolutely, Your Honor. The point is that this rule gives the states a greater degree of regulatory flexibility to meet the deadline. And we've said time and again that that kind of injury doesn't count under Article III. Greater flexibility waiving a rule that would otherwise constrain the challenger's options, that's what we have here. Your Honor, I do believe we have standing here for three reasons. I'll kind of skip ahead to the option theory is the one that the EPA specifically advanced in Air Alliance, and this Court squarely rejected it. That's the issue, and that was also a delay case. There, it was absolutely clear that New York always could have adopted the challenge rule itself, the challenge standard itself, more quickly. But that did not defeat standing there. That's your best case, but it's a different regulatory system. I mean, here you're locked in to all of your obligations as primacy states, right? You're going to have to enforce the federal standard either way. I think that's right. The only question, you haven't said, gosh, we would otherwise opt out of primacy, and there might be injuries flowing from that. So we take that as a given. We take as a given the federal standard is what it is. You're going to have to enforce it. The only question is when you promulgate your conforming regs to make your own standards equal to or greater than the federal standard. Your Honor, I think all of this goes to compliance costs, so I'd like to go through that first and then circle back on the others. We don't think the fact that we're primacy states or direct regulators here is a distinction with airlines that hold the weight. If anything, it means that we have less choice than New York did there. New York was essentially much less bound and had greater optionality, whereas as primacy states, we effectively have less choice. And the subject matter also makes it such that as a practical matter, we have less choice as well. We're not going to choose to not run drinking water systems. That would be catastrophic. But turning to the cost, even if you accepted EPA's premise of this choice argument, which this court rejected in their lines, it still would only account for part of the state's harms and not all of them. And that's because even if the states adopted this option to adopt these standards earlier, other states would not need to. And other states would, in fact, take the option that EPA is offering them to delay that. EPA has calculated that that will cause permanent brain injury in children to occur. They have not disputed our evidentiary submissions. That is a result that will be increased Medicaid and Medicare expenditures. And many of those children will move to petitioner state. And so this 2017, the January, sorry, 2020, 2021 rule was so underprotected. But I mean, there's a challenge to that rule. It's brought by people you would expect to be bringing a challenge to that kind of rule, which are the environmental groups. And none of the states are involved. That's correct. But I don't think that has any legal significance. I mean, here we have EPA itself is quantified. But I mean, it makes it seem a little bit rich. Your your standing theory that kids all over the country will be getting brain damage and moving into your states and you'll have Medicare costs, Medicaid costs, whatever. When there's a direct challenge to the rule and none of the states even bothered to join it. Your Honor, ultimately, I don't think it bears on the standing analysis here. What we're dealing with is a statistical certainty that these things will happen. The numbers are calculated by EPA themselves. They flow inexorably and are essentially not denied here. So regardless of how the other case is proceeding, that doesn't affect our standing here as a legal matter. I think we also have standing on two other bases. I don't know if I heard you correctly. And I don't recall seeing this in the brief. But are you saying that that even if you buy you, I mean, the states that are parties promulgated regulations that duplicated the ones that are being delayed by EPA, even if you did that, if the other states don't do it, then because of the interconnection of navigable waterways and so on and so forth, that you would still be subject to harm? Not because of navigable waterways, Your Honor, but rather because of navigation of people themselves. Arizona and Texas are two of the states that are most migrated to within the United States. And so if children incur these permanent brain injuries as a result of lead in water in other states, it's statistical certainty that many of them will move with their parents to both Arizona and Texas. It's the individuals that would move, not the water. Exactly. OK, because why? Because drinking water supplies are self-contained. Is that right? For the most part, Your Honor, I'm sure there's some that there may be edge cases where that doesn't hold. That's what I understood. And I wondered about the interplay between waters moving and pollution and so on and so forth. That's not part of your... That's correct, Your Honor. Our standing theory is based on the movement of people and not the waters. This is not a WOTUS case. I do want to quickly highlight two other bases that we think standing exists. The first of this court has well-established doctrines of when someone is the regulated party or the object of the regulation at issue in the Parliaments of Lujan. I mean that, but... Your Honor, but... Sure, but when a directly regulated party has the regulation lifted, that doesn't give it standing to challenge the lifting. Your Honor, I think it might. And I think a case of this court that may be fair on that is State National Bank v. Liu. I'm sorry, which one? State National Bank of Big Spring v. Liu. This is not cited in our briefs. It's not in the briefs. I don't recall it. It is not in our briefs. It's 795 F. 3rd 48. There, the regulated party was challenging the CFPB because of the recess appointment as well as its constitutional structure. This court said as the object of regulation, you have standing to challenge that structure even in the absence of any regulation. So there was not yet any regulation that you could figure out if it was more or less stringent or giving more or less... On what theory, though? I assume on the theory that the CFPB would eventually do something to constrain the party bringing the challenge. I think that's implicit, Your Honor, but I think that drives home the point that where were the regulated parties subject us to illegal regulations that we're ultimately going to have to comply with? That's a form of injury. If I could just quickly walk through one other form of injury. I mean, I think your second one is more colorable than your first, but take whichever one you want. A single state needs one theory. So one is, sure. So you've got your directly regulated party theory. You have your kids. Kids elsewhere will get sick and move into our state and then we'll have to pay their medical bills theory. Yes, Your Honor, and I'd add Air Alliance rejects the optionality theory, at least in our view. And then you have a third. The third is, Your Honor, that we have compliance costs in the form of planning and familiarization costs. The uncertainty. Yes, Your Honor. So before the delay rule, it's undisputed that we would only have to prepare for a single standard. That's the LCRR. There was nothing else to plan for. It's less costly to plan for one option. As a delay rule, here's where EPA itself said the state should now do. EPA recommends the states consider each of these possibilities. That was total repeal, no changes and modifications in their planning and resource allocation decision. The EPA itself is admitting that as a result of the delay rule, instead of planning for one standard, we now should be planning for multiple standards. They said a lot of things confirming the truism that they can always change the law to impose new requirements on you. The final agency action under review is, as far as I can tell, one and only one thing, which is the order delaying the effective date of the January 2021 revisions, which are now, in effect, effective but not applicable. I forget the distinction. They are what they are. You know what they are. You plan for the T plus three years when you have to comply with them. Your Honor, I guess a couple of things about that. One, the EPA is not arguing this. It would have been judged at the time of our petition when it wasn't in effect. But more fundamentally, the delay rule is inextricably intertwined with the reconsideration itself. The two cannot be separated. Their EPA's explicit rationale for the delay rule is the reason they give. And so you can't you can't parse the two of those. The delay rule is delay for reconsideration, and it's that reconsideration that causes us to incur additional. The reconsideration has run its course and the amended standard has become effective. It has, Your Honor. I mean, I think there is still uncertainty as a result of what they're doing here. And, you know, mootness is is now just a question of whether it's impossible to grant any relief. EPA has not even made any intention that that's not the case by having some additional certainty that would allow the states to plan, you know, plan more directly. Because at least then, you know, this issue would be resolved as well as whatever is going to go forward. How do we eliminate how do we reduce uncertainty if we set aside this deadline and everything just moves back six months? How does that address uncertainty? And they still have the authority that they have, that they asserted in December of 21, that they can they can ramp up the amended 2021 standards more in the future if they want to. Your Honor, I think the I think that ultimately the EPA understanding of how they can proceed is something that is causing us the uncertainty here, where they believe they can delay things solely for the purpose of reconsidering them is something that has led to this entire dispute. I'm sorry, Judge Rogers. I think I cut you off. Well, I wanted to ask counsel the series that you offer on standing, though, what are their limitations? As I understand it, even a rule in effect, as Judge Katz has been pointing out to you, can be amended. The agency will often issue statements about we're considering whether or not we ought to amend this rule for following five reasons. That's uncertainty. And I don't understand how your theory provides any limitation. Such that any state at any time as to any existing rule. Can probably point to statements by high ranking agency officials that maybe we ought to reconsider this for the following five reasons. Or, you know, very well, as Judge Katz was pointing out to you in the beginning, the environmental groups. Have brought a challenge that's ongoing. So there's all this uncertainty in the world. And to the extent standing has some requirement of specificity and eminence. How does your theory. How is it compatible with those basic requirements of standing. Your honor, I will certainly admit that our injury regarding year one planning has weakened since this case was filed. Standing is, of course, judge the time that the petition for review is filed and where those year one compliance costs were very much live. I think the fact that the rule is now taking effect would be an issue of business, which this sorry, which EPA has not seen fit to argue. And so that that that is something that they certainly would have presented and perhaps will now do. But that is not something that is in the briefs. So as to the current state of affairs. Where this is now taking on more of a flavor of mootness than standing element that are that are self-evident standing and are proprietary Medicaid and special education costs. Are now more relevant in the posture here today than they were when the petition for review is filed. Of course, that's when standing should be assessed with taking up all your time on standing. I'll give you a little bit of time on the merits, unless my colleagues have questions on the merits. Just ask you to keep it brief. Thank you, your honor. I appreciate that. And again, our alliance makes clear that your fact of reconsideration is not a basis for delaying a rule. EPA has repeatedly admitted that's exactly what it did. That squarely violates their alliance. And as to the discount rate, three versus seven percent is utterly dispositive of quantified cost benefit analysis here. EPA didn't even attempt to select one, let alone do so intelligibly as this court's NRDC versus Harrington case requires. And therefore, that violates the APA. Randolph, Judge Rogers. Thank you. Thank you. And we'll give you rebuttal. It's Chen. Good morning. Good morning. And may it please the court. Sue Chen for the United States. And with me today is Leslie Dartmouth from EPA's Office of Delay Counsel. EPA issued the delay rule with support from a broad range of stakeholders, including Petitioner Texas. After a short delay, the revision is now in effect and EPA is working on a new rule to really strengthen the revision's protection. I'd like to first address standing and then answer any questions you may have on the merits. Petitioner is not standing to challenge the delay rule for two reasons. First, the delay rule, rather than create new obligations, offers primacy states and their water systems an extension. But what is more, the petitioner's primacy status puts them in the position of having to either accept or reject that option. And that is because as primacy states, petitioners must adopt the revision rule whether the delay rule exists or not. And so the cost of that adoption don't count for purposes of their standing. The question that the delay rule raises is what compliance date petitioners will write into their state regulations. And this is the point where they can act on EPA's offer. They can either accept that offer of the later October 2024 compliance date, or they can reject it and stick to the January 2024 date that was that came originally with the revision. And if they reject, no one in their jurisdictions get the benefit of the compliance. Moreover, there is no evidence that rejecting EPA's offer, that writing in the word January as opposed to October, would somehow incur more costs for petitioners. So because petitioners can costlessly veto the delay, any delay-related injury would be self-inflicted. My second point on standing. Are you saying that I'm having some difficulty understanding you because of the mask? Sorry. But are you saying that, number one, that the effective date is already come and gone? Yes. Right. And that the difference between the original rule and the delay rule is that under the revision rule, it would be January 2024 when you had to comply. That's right. But now it's October 2024. Correct. And that if there's harm, it has to be between January 2024 and October 2024? No. What I'm saying is petitioners, so the delay rule offers them the option of a later compliance date. And they have to either accept or reject that date. And they can pick whatever they want between January and October. And so to the extent they have any injuries relating to the delay, that would be because they picked the later October date. Or sooner, right? Or sooner. They can pick tomorrow for their compliance date if they wanted. For compliance, you're talking about? For the water systems in their jurisdictions to comply with the revision. Yes. That is the only part of the revision rule that changes thanks to the delay rule. It's the effective date completely isolated from the substance of the underlying? Compliance. Compliance. Yeah. Because the delay rule did not lift petitioners' obligation to adopt the revision rule. It did not change any other aspect of the revision. They still have to adopt that rule. My second standing point is that the court should reject it, should reject petitioners' belated argument that people moving from other states somehow hurts them. This is raised for the first time in the reply on page 12. And it is forfeited because it comes too late. Especially since in our motion to dismiss at footnote 7, we noted that petitioners don't argue that other states' actions somehow harm them. And in their opposition to our motion, they didn't say anything on this subject. They didn't say anything in their opening brief, even though the court had ordered the parties to read the issues in the motion to dismiss. And there's no good cause to excuse that belated argument because that theory that they presented in the reply fails to irrefutably show standing. And the main problem there is that they have offered no specific facts to show that any injury is imminent. There's a lot of speculation built in, one of which is that it's not clear that their future residents will be coming from water systems that would have to take any corrective action under the delay rule. So by corrective action, I mean replacing lead service lines, upgrading corrosion control treatment, and public education. And under the revision rule, water systems have to do those things only if sampling shows that their lead levels exceed certain thresholds. Well, in the revision rule's economic analysis, EPA estimated that between 58% to 97% of community water systems would not exceed those. So they would not have to take any corrective action. And people moving from those water systems to petitioner states would not count for purposes of standing. And I realize that I think the court probably does not have a copy of the economic analysis because we weren't able to make this argument in our brief. And I'm happy to submit a link after our argument to the court if that would be helpful. Even for water systems that would have to take corrective action under the delay rule, when they have to do it relative to when future residents will be moving to petitioner states matters. So under the revision rule, once a water system exceeds those thresholds, they don't have to take corrective action right away. Depending on their size and what their state regulators require, it could be a while before those corrective actions have to be actually implemented. And so for people who are moving to petitioner states, before those corrective actions would have to take place without the delay, those people would also not count for purposes of standing. And really, I mean, one of the problems here is that petitioners have said nothing about this timing issue, let alone present specific facts. And so I think at best what they have alleged is the kind of someday injury that Supreme Court rejected in Lehigh. And I think really, at the end of the day, all that the delay rule does is, as you said, Judge Patsis, it offers petitioners the option of more time. They're free to reject it. There's really no dispute here for the courts to get involved. I'm happy to answer any further questions you may have, including on the merit. Judge Rogers? No, thank you. Thank you. Thank you very much. Thank you, Your Honors. Four quick points on rebuttal. First, EPA has never answered the state's argument under this court's doctrines that standing is self-evident when a regulated party is affected by regulations. They didn't answer in their brief, and they did not address it today. I realize standing is, of course, not a waivable issue, but they have said that standing is self-evident when a regulated party is affected by regulations. They've offered no argument on why that does not apply here. What's your response on the theory about out-of-staters getting ill and moving in? What's your response to the government's forfeiture? Your Honor, it's a response to their argument that because we have a choice, it doesn't cause us injury. So it's a direct response to them. It's not waived because it's— You need an affirmative theory of standing. That's correct. Their defenses are not waivable, but your affirmative theories are. That's correct, Your Honor. So let's assume, for the sake of argument, I don't buy your first argument that you're the regulated party, so you're done. Yes, Your Honor. You need another affirmative theory of standing, and the next one you offered up was this one about out-of-state kids getting sick and moving in, and it's either preserved or it's not. But if it's not preserved, it's a problem for you. Your Honor, I agree that we needed to make it as an affirmative case, and I believe we have here. Our opening brief expressly raises that we will suffer injury, proprietary injuries, in the form of increased Medicaid costs and increased special education expenditures. In response to that argument, EPA waived that you have an option argument that this court squarely rejected in their alliance. But even if that had merit, our argument about movement of people is a response to their choice argument and demonstrates why that would only preclude some but not all of our arms, leaving the states with some cognizable injury. So that movement of people is a direct response to EPA's defense that our proprietary costs don't count, and it's a reply to that argument as to why the proprietary costs that we raised in our opening brief still hold. So that was an argument raised in our opening brief, and they do not, in fact, dispute the fact that we will incur these costs. They just argue they're not cognizable. Our argument to reply was a response to that argument, but it's all part of the original proprietary injury argument advanced in our opening brief. Got it. Judge Rogers?  Okay, thank you. Thank you, Your Honor.
judges: Katsas, Randolph, Rogers